IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV195-GCM

| | |
|---|---|
| JAMES WARFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| ICON ADVISORS, INC. and ICON ) | |
| DISTRIBUTORS, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Plaintiff's Motion to Confirm Arbitration Award and upon Defendants' Motion to Vacate Arbitration Award. Both motions have been fully briefed and are ripe for disposition.

I.     FACTUAL BACKGROUND

Plaintiff James Warfield ("Warfield") was employed by Defendants ICON Advisors, Inc. and ICON Distributors, Inc. ("ICON") from May 2017 to November 2017 as a mutual funds wholesaler. Warfield is a broker regulated by the Financial Industry Regulatory Authority ("FINRA"), and ICON Distributors, Inc. is a brokerage firm regulated by FINRA. Warfield is a resident of North Carolina and, as outlined in his offer letter and agreement, his employment was at-will. (Doc. No. 3-1, pp. 18, 23).

On November 6, 2017, Defendants terminated Warfield's employment. In the Form U5 Uniform Termination Notice ("U5") ICON filed with FINRA following Warfield's termination,

1

ICON was required to provide a termination explanation.[1] Warfield asserts that the termination explanation provided by ICON on his U5 was false and defamatory.

On March 14, 2019, Warfield initiated an arbitration against ICON by filing a Statement of Claim with the FINRA Office of Dispute Resolution.[2] Warfield filed an Amended Statement of Claim on April 11, 2019. In his Statement of Claim, Warfield asserted claims for wrongful termination, defamation, and unfair and deceptive trade practices and sought damages and other relief exceeding $5,000,000.00. Warfield also sought expungement of the allegedly defamatory language in his Form U5. Specifically, he sought to have expunged the reason for his termination ("Termination Explanation") in Section 3 of Form U5 filed by ICON Distributors on December 5, 2017.

The arbitration Panel held a four day, in-person, recorded evidentiary hearing on February 25 through February 28, 2020 in Charlotte, North Carolina. Both parties appeared and were represented by counsel at the hearing. After considering the pleadings, testimony, evidence, and arguments presented at the hearing, the Panel issued its written arbitration award (the "Award") on March 18, 2020. The Panel awarded Plaintiff $1,186,975.00 in compensatory damages for the stated claim of "wrongful termination *without just cause*." (Doc. No. 3-3, p. 3) (emphasis added). The Panel also ordered that the termination explanation on Plaintiff's Form U5 should be expunged and replaced with "Awaiting Financing to Clear Tax Liens." (*Id.*) Warfield has moved to confirm the award and enter judgment thereon pursuant to Section 9 of the Federal Arbitration Act. The Defendants have moved to vacate.

---

[1] The Form U5 is the FINRA Uniform Termination Notice used by members and associated persons of the FINRA, which is required to be filed by the employer within 30 days of an employment termination.

[2] Under the FINRA rules that govern Warfield as a FINRA regulated broker and that govern ICON as a FINRA regulated brokerage firm, Warfield was required to pursue these claims through FINRA arbitration.

## II. DISCUSSION

A federal court's review of an arbitration award is "substantially circumscribed." *Central West Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 272 (4th Cir. 2011) (quoting *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010)). In fact, the scope of judicial review for an arbitrator's decision is "among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all …." *Three S. Del., Inc. v. Dataquick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (citation omitted). Accordingly, "vacatur of an arbitration award is, and must be, a rare occurrence." *Raymond James Fin. Servs, Inc. v. Bishop*, 596 F.3d 183, 184 (4th Cir. 2010).

Although the Fourth Circuit has established a deferential standard in reviewing arbitration awards, "'courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators.'" *Sonic Automotive, Inc. v. Price, et. al*, No. 3:10-CV-382, 2011 WL 3564884, *11 (W.D.N.C. Aug. 12, 2011) (quoting *Matteson v. Ryder–System, Inc.*, 99 F.3d 108, 113 (3d Cir. 1996)). Pursuant to 9 U.S.C. § 10 the grounds for vacating an award are as follows:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators *exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (emphasis added).

In *Stolt–Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), the Supreme Court addressed the standard relating to Section 10(a)(4) and provided federal courts with this concise direction: "It is only when an arbitrator strays from interpretation and application of the

3

Case 3:20-cv-00195-GCM   Document 19   Filed 06/16/20   Page 3 of 8

agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable ... In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." 130 S. Ct. at 1767. Moreover, vacatur is appropriate where the award "does not draw its essence from the agreement," or where the arbitrator's interpretation of the contract is "wholly baseless and completely without reason...." *Sonic Automotive, Inc*., 2011 WL 3564884 * 11 (internal citations omitted).

The Fourth Circuit has recognized that "manifest disregard" of the law also exists as either an independent ground for overturning arbitral awards or as a judicial gloss on the grounds for vacatur set forth in 9 U.S.C. § 10. *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012). The Court has adopted a two-part test for manifest disregard of the law: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator [] refused to heed that legal principle." *Id.* (quoting *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008)). A misapplication or error in the law is not manifest disregard of the law.

> [A] court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision.

*Remmey v. PaineWebber, Inc*., 32 F.3d 143, 149 (4th Cir. 1994).

The Court finds that the Award on Warfield's claim for "wrongful termination without just cause" (Doc. No. 3-3, p. 3) has no basis in North Carolina law because no such cause of action exists for "at-will" employees. *See Kurtzman v. Applied Analytical Indus*., 493 S.E.2d 420, 422 (N.C. 1997), *rehearing denied*, S.E.2d 594 (N.C. 1998) ("North Carolina is an

employment-at-will state. This Court has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party. There are limited exceptions. First, as stated above, parties can remove the at-will presumption by specifying a definite period of employment contractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. Finally, this Court has recognized a public-policy exception to the employment-at-will rule."). Warfield has never alleged or argued that his termination was based upon an impermissible consideration or that Defendants violated a "public policy." [3]

Despite the clear and established North Carolina law on this issue, Plaintiff argues that the law is "unsettled and debatable." In his briefs and during the arbitration, Warfield relied on two cases from other circuits, *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310 (7th Cir. 1981) and *PaineWebber, Inc. v. Agron*, 49 F.3d 347 (8th Cir. 1995), for his proposition that the arbitration procedure somehow alters the employment at-will relationship into a "for cause" termination employment relationship. However, in *Raymond James*, the Fourth Circuit vacated an arbitration award and expressly declined to apply the principles outlined in *Shearson* or *PaineWebber* in an employment at-will relationship. 596 F.3d at 195, n. 16; *see also Gheradi v. Citigroup Global Markets, Inc.*, No. 1:18-cv-20969-UU, 2018 WL 4864851, *13 (S.D. Fl., July 26, 2018) ("In *Raymond James*, the Fourth Circuit Court of Appeals distinguished *PaineWebber*

---

[3] "[T]he public policy exception to the employment at-will doctrine is limited to those instances in which an employer affirmatively instructs an employee to violate the law." *Haburjak v. Prudential Bache Securities, Inc.*, 759 F. Supp. 293, 301 (W.D.N.C. 1991).

5

and *Shearson* because those cases involved the interpretation of collective bargaining agreements and in such circumstances the arbitrator is charged with determining 'whether a discharged employee should be reinstated.' The Fourth Circuit also noted that in neither *PaineWebber* nor *Shearson* '[w]as the court faced with an express agreement providing for termination at will.'…This Court finds the Fourth Circuit's reasoning in *Raymond James* persuasive; where arbitrators imply a termination 'for-cause' provision into a private employment agreement that expressly provides for termination 'at-will,' the arbitrators do more than commit a permissible error of law, they exceed their authority by ignoring the agreement's plain language.") (citing *Raymond James*, 596 F.3d at 194. The Court finds that the law in this state and in this Circuit is clearly defined and not subject to reasonable debate. North Carolina does not recognize a claim of "wrongful termination without just cause" for at-will employees like Mr. Warfield.

Plaintiff next argues that Defendants failed to instruct the Panel on the law it now asserts forecloses Plaintiff's wrongful termination claim. Thus, the Panel was not "aware" of the law and could not disregard it. Moreover, Plaintiff claims that Defendants never argued that the Panel was bound by Fourth Circuit law and in fact argued that Colorado law should apply.

Despite Plaintiff's argument, both prior to and during the arbitration hearing the arbitrators were advised that the central argument being advanced by Claimant directly conflicted with the clear, established principles of North Carolina law. Both Defendants' Trial Brief and Statement of Answer specifically and concisely address this point head on. (Yarbrough Dec., Doc. No. 13-1, ¶ 7, Ex. 3, pp. 85-87; Ex 1, pp. 14-17). Moreover, the substantive arguments advanced by the Defendants at the hearing were based on Fourth Circuit and North Carolina law. In the hearing transcript attached by Plaintiff regarding ICON's Motion to Dismiss, Defendants' opening line addresses North Carolina law as the standard, outlines that

6

Plaintiff has not established any public policy, and argues that Plaintiff's argument "would suggest that every FINRA arbitration, every employment agreement arbitration… would be subject to a just cause standard." (Rickner's Second Declaration, Doc. No. 15-1, Ex. A, pp. 8-9). ("Secondly, wrongful discharge. North Carolina, like 48 other states in the United States is an employment at-will state."). Consistent with their prior instruction of the law to the arbitration Panel, Defendants informed the arbitrators that, to the extent Colorado law may apply because Plaintiff's employment was "established in Colorado with ICON, a Colorado-based company,… in almost all respects, North Carolina law is the same." (Yarbrough Dec., Doc. No. 13-1, Ex. 3, p. 85; *see also* Doc. No. 13, p. 9, n.8). As such, the argument advanced by Defendants was that the standard was the same and that the arbitrators should apply this clearly applicable law. (Doc. No. 13-1, p. 14).

The Court finds that the Defendants made the Panel aware of the clear, well-established law in North Carolina and the Fourth Circuit, and the Panel chose to disregard the that law. The arbitrator's Award therefore demonstrates manifest disregard and must be vacated. As noted earlier, the Court is mindful that vacating an arbitration award should be a "rare occurrence." However, under the circumstances of this case, the Court finds it appropriate.

The Court will briefly address Defendant's argument that the Panel's ordered language on Warfield's U5 must be vacated because it violates FINRA's rule that the reason for an involuntary termination must be clearly and candidly stated on the U5.[4] Unlike the Panel's

---

[4] The FINRA rule provides as follows: "A firm must provide sufficient detail when responding to Form U5 questions such that a reasonable person may understand the circumstances that triggered the affirmative response. For example, for purposes of Section 3 on Form U5, it is not sufficient for a firm to report only that a person's registration was terminated because that person violated "firm policy." If a firm is obligated to report that a registered person was terminated because he or she violated a firm policy, the firm must identify the policy, provide sufficient facts and circumstances to enable the reader to understand what conduct was involved, and review other questions on the form to determine whether an affirmative response to any other question is required." FINRA Regulatory Notice 10-39.

7

manifest disregard of the law in their award of damages to Warfield for wrongful termination without just cause, the Court cannot say that the Panel's U5 language exceeded their powers or demonstrated a manifest disregard of the law. Accordingly, the Court declines to vacate this portion of the Award.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Confirm Arbitration Award is granted in part and denied in part. The Award is confirmed as to the Panel's ordered replacement language for Warfield's U5;

IT IS FURTHER ORDERED that Defendants' Motion to Vacate Arbitration Award is granted in part and denied in part. The Court vacates the Award to the extent it grants Plaintiff's claim for wrongful discharge without just cause.

Signed: June 16, 2020

Graham C. Mullen
United States District Judge

8

Case 3:20-cv-00195-GCM   Document 19   Filed 06/16/20   Page 8 of 8